IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CALGON CARBON CORP.,  )
                      )
      Plaintiff,      )
                      )
v.                    )   Civil Action No. 08-1355
                      )
ADA-ES, INC.,         )
                      )
      Defendant.      )

## BENCH MEMORANDUM

This action arises out of a business dispute between Calgon and ADA. Plaintiff Calgon seeks a declaration that it does not owe defendant ADA commissions from its sales of powdered activated carbon or PAC products to a third company, Midwest Generation. Calgon contends that the parties intended that commission payments to ADA would only be triggered under the MOU on sales that were actually made when the MOU was in effect, and because no sales were made when the MOU was in effect, ADA is not entitled to receive commissions under the terms of the MOU.

ADA disagrees and asserts counterclaims for breach of contract and unjust enrichment. As to its breach of contract claim, ADA first contends that in drafting the MOU, the parties' intent was for the survivorship clause, section 10.2, to preserve ADA's right to receive commissions after the MOU terminated, as long as the sales stemmed from joint marketing efforts that were undertaken during the MOU. Under this theory, because Calgon's sales to Midwest allegedly arose out of ADA's joint marketing efforts with Calgon during the MOU, ADA is entitled to commissions

even though such sales were not made until several months after Calgon terminated the MOU.

ADA has now advanced a second breach of contract theory. ADA claims that in the event that either party terminated the MOU, another proper interpretation of the survivorship clause is that once joint marketing efforts were undertaken during the term of the MOU as to a particular company (in this case Midwest), any continuation of those marketing efforts after termination would still be deemed to have occurred within the terms and scope of the MOU, and, as such, would trigger commission payments due under the MOU. This second interpretation of the survivorship clause was not set forth in ADA's Brief in Support of its Motion for Summary Judgement, nor in ADA's Pretrial Statement. This second interpretation was asserted to the court for the first time during the morning conference on the third day of trial.

Although we previously found that the MOU was ambiguous as to "whether the parties intended for the survivorship clause of the MOU to extend to sales contracts that were executed subsequent to the termination of the MOU" (ADA's first theory), [doc. no. 145], thus creating a jury question, it does not follow that an ambiguity exists as to whether the survivorship clause of the MOU meant that neither party could terminate the relationship once joint marketing efforts had begun (ADA's second theory). In this respect, the MOU is unambiguous, and the meaning of an unambiguous

2

written instrument presents a question of law for resolution by the court.

The survivorship clause, section 10.2 of the MOU, provides, in relevant part:

> All provisions of this Agreement shall survive any termination of this Agreement as necessary to effectuate the Parties' residual rights and obligations following any such termination, according to the plain intent of such provisions and legal custom. Without limiting the foregoing, (i) any expiration of [sic] termination of this Agreement shall be without prejudice to any accrued rights of the Parties....

Under ADA's new, second interpretation, even if one party terminated the MOU, as it had the right to do, under the survivorship clause the parties rights and obligations to continue joint marketing efforts remained in full force and effect as long as the continued efforts were related to joint marketing projects that started when the MOU was in effect. Under this interpretation, however, neither party would ever be able to terminate the joint marketing relationship once any joint marketing efforts began. This interpretation is inconsistent with other terms in the MOU, specifically the termination clause, section 10.1.c, which allowed either party to terminate the MOU upon thirty days notice. To give section 10.2 the meaning ADA advocates under its second theory would render section 10.1.c of the MOU meaningless. The purpose of the MOU was to agree to jointly market PAC products. Had the parties intended that they would be unable to cease such joint marketing efforts once they began, they would

not have included the broad termination provision that is found in section 10.1.c. There is no support, in fact or law, for ADA's newly advanced second theory.

Accordingly, we find, as a matter of law, that the survivorship clause cannot be interpreted in accordance with ADA's second theory. ADA will not be permitted to argue this theory to the jury. This ruling, however, does not preclude ADA from arguing to the jury that any post-termination marketing efforts are compensable through its unjust enrichment claim.

BY THE COURT

_____, C.J.

Dated: July 27, 2010

4